```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
```
**CENTRAL DIVISION AT LEXINGTON**

LISA GAYLE SHUCK,              )
                               )
     Plaintiff,                ) Action No. :17-cv-0064-JMH
                               )
v.                             )
                               ) **MEMORANDUM OPINION AND ORDER**
NANCY A. BERRYHILL,            )
Acting Commissioner of         )
Social Security,               )
                               )
     Defendant.                )

                    **    **    **    **    **

This matter is before the Court on the parties' cross-Motions for Summary Judgment (DEs 13 and 15) on Plaintiff's appeal of the Commissioner's denial of her current application for Disability Insurance Benefits (DIB).[1] The matter having been fully briefed by the parties is now ripe for this Court's review pursuant to 42 U.S.C. § 405(g).

**I.   Overview of the Process and the Instant Matter**

In determining whether an individual is disabled, an Administrative Law Judge ("ALJ") uses a five step analysis:

   1. An individual who is working and engaging
      in substantial gainful activity is not
      disabled, regardless of the claimant's
      medical condition.

   2. An individual who is working but does not
      have a "severe" impairment which
      significantly limits his physical or mental

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

> ability to do basic work activities is not disabled.
>
> 3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or equal to a listed impairment(s)", then he is disabled regardless of other factors.
>
> 4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.
>
> 5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994)(citing 20 C.F.R. § 404.1520(1982)).

**II.**

Plaintiff filed her current application for Disability Insurance Benefits (DIB)[2], alleging disability as of February 7, 2006 (Tr. 179-187). The application was denied initially and on reconsideration, and by an Administrative Law Judge (ALJ) after a

---

[2] Plaintiff's date last insured for DIB was September 30, 2012 (Tr. 334). *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997) (For applications concerning disability benefits, "the only necessary inquiry is whether the claimant was disabled prior to the expiration of his insured status.").

2

hearing (Tr. 13-30). The Appeals Council declined Plaintiff's request for review (Tr. 1-2), making the ALJ's May 15, 2015 decision the final agency decision for purposes of judicial review. 20 C.F.R. § 422.210(a).[3] This appeal followed.

### III.

Plaintiff was 41 years old when she most recently allegedly became disabled on May 8, 2012, and 42 years old when she was last insured for DIB on September 30, 2012 (Tr. 316). Plaintiff has a twelfth-grade education, with additional training and certifications, and listed past relevant work as a police officer (Tr. 358-359). Plaintiff initially alleged she was unable to work due to both physical and mental impairments (Tr. 357).

Providers at Comprehensive Care (Comp Care) treated Plaintiff since 2010 through her date last insured for DIB in September 2012 related to her complaints of anxiety, panic attacks, and depression (Tr. 439-448, 522-539). In June 2010, Comp Care psychologist Ellen L. Crawford, Ph.D., completed a basic assessment report describing Plaintiff's ongoing problems with stress, depression, and pain related to a right arm injury. Plaintiff also reported that she had experienced a few panic attacks. Dr. Crawford assessed

---

[3] Plaintiff's now alleged disability onset date of May 8, 2012, is one day after the previous ALJ's May 7, 2012 decision, and only four months before her date last insured for DIB (Tr. 316).

Plaintiff with a major depressive disorder, single episode, mild; and panic disorder without agoraphobia (Tr. 439-440).

In late April 2012 one-page correspondence, Dr. Crawford advised that Plaintiff had been treated at Comp Care for significant mental health problems including depression, panic disorder with agoraphobia, and an eating disorder since June 2010. Dr. Crawford reported that Plaintiff was struggling to overcome her symptoms, particularly those involving agoraphobia and panic attacks. Dr. Crawford opined that Plaintiff was currently unable to work (Tr. 450)

In February 2015, Dr. Crawford completed a medical source mental assessment check-box form (Tr. 594-602). Dr. Crawford opined that Plaintiff was subject to marked restrictions of activities of daily living; extreme difficulties in maintaining social functioning; moderate deficiencies of concentration, persistence or pace; and three extended-duration episodes of decompensation. Dr. Crawford further concluded Plaintiff had markedly limited abilities to perform activities within a schedule; maintain regular attendance, and be punctual within customary tolerances; to work in coordination with or proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically-based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods; to accept

4

instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them distracting them or exhibiting behavioral extremes; and to travel in unfamiliar places or use public transportation (Tr. 594-602).

During the most recent administrative proceedings, state agency medical consultant, Alex Guerrero, M.D., reviewed the record and opined that Plaintiff had no restrictions in her activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation of extended duration (Tr. 135-136, 138).

Plaintiff testified that she had attended school through the twelfth-grade, one semester of college, and attended the police academy (Tr. 43-44). Plaintiff said that she had received worker's compensation of a work-related injury to her right upper extremity (Tr. 46). Plaintiff said that she was unable to work primarily from her right hand problems (but no surgery), anxiety and depression (Tr. 47-48). Plaintiff testified that she could do light housework and drives 3-4 times a week (Tr. 54-55).

A vocational expert (VE), Betty Hale, testified at the March 30, 2015 hearing (Tr. 66-70). After determining Plaintiff's past relevant work, the ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education and work experience, with

5

limitations the same as those ultimately determined by the ALJ to be those of Plaintiff (and as found in a previous ALJ's May 2012 decision (Tr. 67-68). The VE testified that such an individual could not perform her past relevant work but could perform the representative unskilled light exertion occupations of laundry worker and machine attendant (Tr. 68-69).

After a careful review of the record, the ALJ found that Plaintiff had the severe impairments of radial tunnel syndrome of the right elbow; right carpal tunnel syndrome; obesity; a depressive disorder; and a post-traumatic stress disorder (PTSD) (Tr. 19; Finding No. 3), but that Plaintiff's impairments did not meet or equal the severity of a listed impairment (Tr. 20; Finding No. 4). The ALJ found that Plaintiff had the RFC to perform light exertion work with additional manipulative, environmental, and mental limitations (Tr. 22; Finding No. 5), and that her complaints of disabling limitations were not entirely credible (Tr. 27). Finally, after receipt of persuasive VE testimony, the ALJ found that although Plaintiff could not return to her past relevant work (Tr. 28; Finding No. 6), there were a significant number of jobs in the national economy that Plaintiff could perform, including the representative light exertion positions of laundry worker and machine attendant, through her date last insured for DIB (Tr. 19-20; Finding No. 10). Thus, the ALJ found that Plaintiff was not disabled under the Act (Tr. 30; Finding No. 11).

**IV.**

Plaintiff raises two arguments in her challenge to the ALJ's decision. She argues that the ALJ did not properly consider medical source opinions and, in doing so, erred in assessing her RFC and resulting hypothetical question to the VE; and that the VE did not explain alleged discrepancies between her testimony and the and the DOT.

To begin, in the May 2015 ALJ's decision now before the Court, the ALJ justifiably determined that the precedents established in *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) and *Dennard v. Secretary of Health and Human Services,* 907 F.2d 598 (6th Cir. 1990), dictate that the RFC finding in the previous ALJ's denial decision was controlling unless there was new and material evidence or a showing of "changed circumstances" relating to a determination of the present claim. The ALJ reasonably noted that she had not found any evidence of significant physical or mental deterioration since the prior hearing decision in May 2012, and that she adopted the prior ALJ's conclusions as to Plaintiff's RFC (Tr. 23). Plaintiff provides no substantial relevant arguments for not applying *Drummond* and *Dennard* in the case before the Court. Instead, Plaintiff makes general assertions and primarily sets forth medical evidence that was originated after her date last insured for DIB on September 30, 2012, but does not proceed to support her assertions with any newly developed

7

argumentation as to why the controlling law as set forth in *Drummond* and *Dennard* does not apply for the four month period between her current alleged disability onset date of May 8, 2012 and her date last insured on September 30, 2012.

Applying *Drummond*, adjudicators in the Sixth Circuit are required to adopt findings from the final decision by an ALJ on a prior claim unless there is new and material evidence related to a finding. *See* AR 98-4(6). Consequently, an ALJ can make a determination as to whether she is bound by the prior ALJ's decision by evaluating the evidence since that prior ALJ's decision and explaining what that evidence shows. That is exactly what the ALJ did in the case before the Court (Tr. 23-28).

The evidence also does not support Plaintiff's allegations regarding the worsening of her mental health symptoms, as a review of the May 2012 prior decision and the ongoing treatment records indicates she has received treatment, with some improvement, of the same general conditions of depressive disorders and anxiety disorders addressed in the previous ALJ's May 7, 2012 decision (Tr. 100-114). The evidence also does not support Plaintiff's allegations regarding the worsening of her mental health symptoms, as a review of the May 2012 prior decision and the ongoing treatment records indicates she has received treatment, with some improvement, of the same general conditions of depressive

8

disorders and anxiety disorders addressed in the previous ALJ's May 7, 2012 decision (Tr. 100-114).

Plaintiff's arguments about the ALJ's reasonable consideration of the medical opinions of record and her mental RFC assessment in the ALJ's May do not withstand scrutiny. The ALJ specifically indicated that she carefully considered the total record including all relevant objective medical evidence, medical source opinions, and Plaintiff's subjective complaints in the making of her RFC finding, and in determining that Plaintiff retained the capacity to perform the identified representative unskilled light exertion occupations (Tr. 19, 22-30; Finding Nos. 5, 10). Plaintiff contends that she experienced a material change in her mental condition in the approximately four months between May 7, 2012 (the date of the previous ALJ's decision), and September 30, 2012 (the date she was last insured for DIB). Pl.'s Br. at 9-13. However, a review of the objective record establishes otherwise. *See Bagby v. Harris*, 650 F.2d 836, 839 (6th Cir. 1981) ("Evidence of new developments in her mental condition subsequent to the expiration of her insured status would not be relevant.").

In the case before the Court, Plaintiff argues that the ALJ erred in not according controlling weight to the opinions of treating psychologist, Dr. Crawford, which, contrary to Plaintiff's argument, the ALJ reasonably discounted with numerous references to both objective medical records and sufficiently

9

probative medical opinions (Tr. 22-28, Finding No. 5). The ALJ justifiably found that the overall total objective medical record (including records from Dr. Crawford) and the opinion from state agency medical consultant, Dr. Guerrero, demonstrated that Plaintiff's alleged mental impairment was not as limiting as the overly-restrictive mentally-related limitations as opined by Dr. Crawford in February 2015 (Tr. 28). *See Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006) ("The ALJ reasoned that Dr. Lin's conclusions are 'not well supported by the overall evidence of record and are inconsistent with other medical evidence of record.' This is a specific reason for not affording controlling weight to Dr. Lin.").

As noted above, the ALJ reasonably discussed relevant medical evidence, including the findings and opinions from treating psychologist Dr. Crawford, as well as state agency medical consultants, Drs. Guerrero and Reed, in reasonably determining that Plaintiff retained the RFC to perform light exertion work with additional manipulative, environmental, and mental limitations, in accord with the previous ALJ's decision of May 7, 2012 (Tr. 22; Finding No. 5). *See* 20 C.F.R. § 404.1527(e)(2)(i) (state agency medical and psychological consultants . . . are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.); *see also Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We . . . are presented with

the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.")

The ALJ justifiably rejected the April 2012 opinion expressed by Dr. Crawford, indicating Plaintiff was unable to work at that time (Tr. 450). The ALJ reasonably noted that such a statement was an administrative finding that was dispositive of a case and reserved to the Commissioner, who cannot abdicate the statutory responsibility to determine the ultimate issue of disability (Tr. 28). *See* 20 C.F.R.§ 404.1527(e)(1)-(3) (treating source opinions on issues that are reserved to the Commissioner are never entitled to any special significance).

The ALJ also reasonably rejected Dr. Crawford's February 2015 check-box form questionnaire responses (in excess of two years after Plaintiff's date last insured for DIB), that Plaintiff had marked restrictions or limitations, or any extended-duration episodes of Plaintiff had marked restrictions or limitations, or any extended-duration episodes of decompensation (Tr. 594-602). *See Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 472 (6th Cir. 2014) (unpublished) (rejecting a treating physician's opinion expressed on a check-box form with no explanation or citation to specific medical records as unsupported by the treating records) (unpublished); *see also Weetman v. Sullivan*, 877 F.2d 20, 22 (6th Cir.1989) (deterioration in the claimant's condition after the period of eligibility is irrelevant). Specifically, the ALJ noted

11

that her review did not establish that Dr. Crawford's opinions were adequately supported by treatment notes or other objective medical evidence during the relevant period of four months between May 2012 and September 2012, as set forth in her decision (Tr. 28). *See Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 472 (6th Cir. 2006) (discussed in *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 748-49 (6th Cir. 2006)) ("The ALJ implicitly provided sufficient reasons for not giving those opinions controlling weight, and indeed for giving them little or no weight overall.")

The real question before this Court is whether the ALJ's RFC finding, one that included specific limitations associated with her alleged mental impairment, was reasonable and properly in accordance with the previous ALJ's May 7, 2012 decision. A claimant's RFC is assessed by the ALJ between steps three and four and is "the most [a claimant] can still do despite [her] impairments." 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1) & (5). An ALJ is required to "assess a claimant's RFC based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). Thus, no medical source opinion is alone conclusive on this issue. SSR 96-5p, 1996 WL 374183, at *2, 4-5 (stating that some issues, such as RFC, are not medical issues regarding the nature and severity of an individual's impairment(s) but instead administrative findings that are dispositive of a case, and thus are reserved to the Commissioner). Similarly, a claimant's

subjective complaints of pain other symptoms cannot alone establish disability. 20 C.F.R. § 404.1529(a). Although there is a limited burden shift to the Commissioner at step five of the sequential evaluation to identify work existing in significant numbers in the national economy that a claimant can perform, the claimant retains the burden of establishing her RFC limitations.

In her May 2015 decision, the ALJ carefully and reasonably considered the entire record (Tr. 19, 22; Finding No. 5), including thoroughly considering applicable medical source statements in the making of her justifiable RFC finding (that resulted in no change from the RFC finding in the prior ALJ's May 2012 decision) (Tr. 104; Finding No. 5). While Plaintiff may have had mental limitations that may have negatively affected her ability to work, the mere existence of mental impairments such as those alleged by Plaintiff, is insufficient to establish disability under the stringent standards of the Act. Instead, Plaintiff had to show that her impairments caused functional limitations so severe as of September 30, 2012, her date last insured for DIB (and only four months after her currently alleged disability onset date), that she was unable to engage in any substantial gainful activity for a continuous period of at least 12 months. *See Barnhart v. Walton*, 535 U.S. 212, 220 (2002); 42 U.S.C. § 423(d)(1)(A). The disability, not just the impairment, must last 12 months. *Walton*, 535 U.S. at 220.

The ALJ reasonably rejected Dr. Crawford's medical source statements as to the extent of Plaintiff's functionally related mental limitations, noting that treatment records, including her own, showed a lack of "material evidence establishing a change" in Plaintiff's medical condition. Thus, the ALJ's RFC finding in the May 2015 decision now before the Court, was "not changed from that set out in the decision issued on May 7, 2012." (Tr. 23; Tr. 104, Finding No. 5). *See Drummond v. Commissioner of Social Security,* 126 F.3d 837 (6th Cir. 1997); *see also Richardson v. Perales,* 402 U.S. at 399 ("We . . . are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."); Bass v. McMahon, 499 F.3d 506, 510 (6th Cir. 2007) (ALJ had no duty to give observations contained in treatment records controlling weight or provide good reasons for not doing so as they were not medical opinions under the regulations).

The ALJ's reasonable mental RFC finding, as set forth in her May 2015 decision, is further buttressed by the opinion of the state agency medical consultant, Dr. Guerrero (Tr. 135-136, 138). Dr. Guerrero determined that "Dennard and Drummond applies in this case" and although there was new information, Plaintiff's condition was much the same at her date last insured as it was described in the previous ALJ's May 2012 decision. Therefore, it was reasonably adopted (Tr. 136). In her May 2015 decision, the

14

ALJ gave Dr. Guerrero's medical source statement careful consideration and "significant weight." (Tr. 27-28). As "[s]tate agency medical and psychological consultants . . . are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i), the decision to give more weight to a state agency doctor over treating and examining doctors is, indeed, permissible. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009).

As noted above, in evaluating the objective evidence in her justifiable RFC finding, the ALJ clearly indicated that there was an absence of objective clinical or laboratory findings to support disabling limitations, mental or physical (Tr. 22-28; Finding No. 5). 20 C.F.R. § 404.1529(c)(4) (ALJ must consider inconsistencies, including conflicts between a claimant's statements and the medical record). Here, the total evidence of record, as set forth above, and thoroughly discussed by the ALJ in her May 2015 decision, does not support Plaintiff's claims of completely disabling mental or physical limitations from her alleged disability onset date of May 8, 2012 (one day after the previous ALJ's decision), through September 30, 2012, the date Plaintiff was last insured for DIB, just over four months later (Tr. 19-28; Finding Nos. 3, 4, 5). S*ee* 20 C.F.R. § 404.1529(c)(4) (stating an ALJ must consider inconsistencies in the evidence). Plaintiff

does not adequately explain why the ALJ's assessment of her mental functioning abilities was unreasonable in light of the probative evidence set forth above. Pl.'s Br. at 9-13.

Further, to the extent that Plaintiff suggests that the evidence before the Court is open to another interpretation that favors her claims, the Court declines her invitation to reweigh the evidence in this fashion. If the Commissioner's decision denying benefits is supported by substantial evidence, as it is here, the Court must affirm that decision. *Longworth v. Commissioner*, 402 F.3d 591, 595 (6th Cir. 2005). Even if substantial evidence exists to support Plaintiff's claim, the Court must affirm the Commissioner's decision because it too is supported by substantial evidence, as demonstrated above. *See Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *see also Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (even if the Court would have decided the matter differently than the ALJ, if substantial evidence supports the ALJ's decision, it must be affirmed).

Next, Plaintiff challenges the ALJ's finding as to her residual functional capacity. However, the ALJ's finding that Plaintiff could perform light exertion work with additional specific manipulative, environmental, and mental limitations was supported by substantial evidence in the record. Moreover, after receipt of persuasive VE testimony, the ALJ justifiably found that

Plaintiff retained the capacity to perform unskilled light exertion work existing in significant numbers in the national economy (Tr. 29-30; Finding No. 10). The ALJ was not required to include additional limitations in her hypothetical question to the VE. *See, e.g., Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ . . . is required to incorporate only those limitations accepted as credible by the finder of fact."). The VE's response to the ALJ's hypothetical question that included Plaintiff's credible limitations constitutes substantial evidence in support of the ALJ's finding that there were jobs in the national economy that Plaintiff could perform including the representative unskilled light exertion positions identified by the VE (Tr. 29-30, Finding No. 10; Tr. 66-69).

Plaintiff also argues that the ALJ erred by not resolving apparent conflicts between the VE's testimony and the Dictionary of Occupational Titles (DOT). In doing so, Plaintiff relies on cases from the Fourth Circuit Court of Appeals. Pl.'s Br. at 14. However, that is not the controlling law or precedent in the case before the Court. Here, the Sixth Circuit Court of Appeals has held on numerous occasions that the ALJ has satisfied the requirement of SSR 00-4p by admonishing the VE to advise if there is a conflict between her answer and the DOT. That is exactly what the ALJ did at the March 2015 administrative hearing (Tr.

67). Moreover, Plaintiff was represented at the March 2015 hearing, and although the ALJ inquired as to whether she had any questions for the VE, the representative responded that she did not (Tr. 70). *See Lee v. Comm'r of Soc. Sec.,* No. 12-6226, 2013 WL 3388486, at *10 (6th Cir. July 9, 2013) ("Moreover, the ALJ asked the VE if her testimony was consistent with the Dictionary, and she answered that it was. This effectively satisfied the Commissioner's burden. *See Kyle,* 609 F.3d at 858. Lee's representative could have — but did not — cross-examine the VE concerning her representation."); *see also Lindsley v. Comm'r of Soc. Sec.,* 560 F.3d 601, 606 (6th Cir. 2009)(where the ALJ has already fulfilled his obligation to ask the vocational expert whether his testimony conflicts with the DOT, the judge need not independently investigate conflicts in vocational expert's testimony not brought to the judge's attention); *Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008) ("[N]othing in applicable Social Security regulations requires the administrative law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge.")

The ALJ properly considered and reasonably weighed the medical source opinions, and Plaintiff's argument to the contrary shall be rejected by this Court.

**V.**

For all of the reasons set forth above,

**IT IS ORDERED**:

1) that Plaintiff's Motion for Summary Judgment (DE 13) is **DENIED;**

2) that Defendant's Motion for Summary Judgment (DE 15) is **GRANTED,** and;

3) The Acting Commissioner's final decision is **AFFIRMED.**

This the 6th day of February, 2018.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge